IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : Crim. No. 1:19-CR-00228 |
| | : |
| **v.** | : |
| | : |
| **VICTOR NATHANIEL JOCKTANE** | : |
| **and NATHANIEL PEREZ** | : Judge Sylvia H. Rambo |

### M E M O R A N D U M

Before the court are objections by Defendants Victor Nathaniel Jocktane (Doc. 133) and Nathaniel Perez (Doc. 134) to the magistrate judge's report and recommendation. (Doc. 108 [hereinafter "R&R"].) The R&R recommends that the court deny Jocktane's motion to suppress (Doc. 52), and grant Perez's motion to suppress as it relates to his statements while being handcuffed (Doc. 54). For the reasons set forth below, the court will adopt the R&R's substantive recommendations.

### I.      BACKGROUND

The court will adopt the R&R's detailed statement of facts with few noted exceptions. On September 27, 2018, at approximately 2:30 a.m., a 911 caller reported that a suspicious, occupied vehicle[1] was parked in the grass behind the caller's apartment building in a neighborhood known to the officers as a high crime

---

[1] Defendants point out that the caller reported observing a black Volvo SUV but that they were found in a dark Dodge minivan. Their minivan substantially matched the caller's description, however, particularly considering the dark conditions at the time and video footage showing the vehicle did not have sliding doors as commonly found on minivans. (*See* Def. Ex. 144 at 2:26:17–40.)

1

area. Minutes later, two uniformed York City police officers approached the rear of the address along a dark alley on foot and located the occupied vehicle with their flashlights.

As Officers Palmer and Fauver approached the vehicle, the front passenger door opened and Perez exited abruptly and closed the door.[2] (Doc. 81 at 14:8–12.) While jumping over a fence to get to the men, Officer Palmer ordered Perez to stay inside the vehicle. (*Id.* at 14:13–16; Def. Ex. 144 at 2:25:06–12.) Perez put his hands up, and after Officer Palmer instructed him to get on the ground, he knelt by the front passenger door until Officer Palmer had reached Perez's side and ordered him to re-enter the vehicle, which Perez then did. (Def. Ex. 144 at 2:25:12–26.) Jocktane was sitting in the driver's seat and had begun opening his door but stopped at Officer Palmer's commands. (R&R at 6.) Officer Palmer credibly testified that he smelled marijuana as soon as Perez opened the door, but he did not mention it because he

---

[2] The parties dispute Perez's intent and the legal implications of his movements, but their factual descriptions can be reconciled. Officer Palmer testified that Perez "immediately exited the vehicle" (Doc. 81 at 14:8–10) and that he did so "very abruptly, which caused [Officer Palmer] to hop the fence, which made [Officer Palmer] think he was going to initiate a foot pursuit." (*Id.* at 36:1–3.) Perez testified, "I literally took one foot out of the car and was face-to-face with the officer. Once the door closed, he was right there in front of me" next to the passenger door. (Doc. 103 at 24:7–9, 15–16.) Regarding Perez's purpose, Jocktane testified the men intended to confront the unknown individuals with flashlights, thinking they were "junkies" trying to break into cars. (*Id.* at 12:4–12.) The magistrate judge did not find either Defendant's testimony credible (R&R at 3, 14) because Perez inaccurately testified that Officer Palmer told him to "get the fuck on the ground," which he later admitted did not happen, and since Jocktane testified that he did not realize he was sitting on or beside a gun even though he had been in the vehicle all day. (Doc. 103 at 16:4–23; 26:15–27:10.)

first wanted to identify the occupants without incident. (Doc. 81 at 38:13–39:14; R&R at 6.)

Approximately twelve minutes into the stop, while the officers were running identification checks on Defendants, Officer Palmer observed a baggie in the vehicle that he suspected to contain marijuana, and he ordered Perez to get out of the vehicle and handcuffed him. Officer Palmer asked him if the substance was marijuana, and Perez confirmed that it was. Officer Fauver then ordered Jocktane out of the vehicle and observed a handgun on the driver's seat. The officers handcuffed both men and read them their *Miranda* rights. A search of the vehicle uncovered a second handgun near the front passenger side of the vehicle as well as additional marijuana.

Defendants filed motions to suppress their statements to the officers and the physical evidence discovered during the stop. (Docs. 52, 54.) The court referred the motions to the magistrate judge for a report and recommendation, pursuant to 28 U.S.C. § 636. (Doc. 60.) The magistrate judge conducted a suppression hearing and issued a report and recommendation that the motions be granted in part and denied in part. (Docs. 63, 66.) Defendants filed objections and requested a second hearing to supplement the record, which the court permitted. (Doc. 94.) Both Defendants testified at the second suppression hearing. (Doc. 103.) The magistrate judge issued the operative R&R in which he found that the officers had reasonable suspicion to stop the Defendants; that during the investigatory detention, the officers formed

probable cause to search the vehicle; and that Defendants' *Miranda* rights were not violated except for Perez's incriminating statements while being handcuffed. (Doc. 108.) The R&R therefore recommended the court deny Jocktane's motion and grant Perez's motion only as it relates to his statements while being handcuffed. (*Id.*) Defendants Jocktane and Perez have since filed objections to the R&R. (*See* Docs. 133, 134.) Thus, this matter is ripe for review.

## II. STANDARD OF REVIEW

A district court may refer a pending motion to suppress to a magistrate judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); *United States v. Raddatz*, 447 U.S. 667, 683 (1980). Where a party objects to a magistrate judge's report and recommendation, the district court must review those contested portions using a de novo standard of review. *See* 28 U.S.C. § 636(b)(1)(C). In performing this review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* § 636(b)(1).

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citing *Simmons v. United States*, 390 U.S. 377, 389–90 (1968)). The government, however, "bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). "The

applicable burden of proof is by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

### III. DISCUSSION

Defendants contend that the magistrate judge improperly relied on the officers smelling marijuana and Perez's hasty exit from the vehicle in concluding that reasonable suspicion justified their investigatory detention.[3] According to Defendants, neither factor could have supported their detention as a matter of law, and the totality of the circumstances failed to support a finding of reasonable suspicion such that the fruits of seizure should be suppressed.

Defendants' first argument that the R&R should not have considered the officers smelling marijuana in assessing whether reasonable suspicion existed is correct. Courts may only consider the facts available to the officer at the time of the seizure, which occurs when an officer restrains a person's freedom of movement by physical force or show of authority, or when a person submits to such a show of authority. *Terry v. Ohio*, 392 U.S. 1, 20-21, n.16 (1968); *United States v. Hester*, 910 F.3d 78, 84 (3d Cir. 2018) (citing *California v. Hodari D.*, 499 U.S. 621, 625

---

[3] All of Defendants' objections relate to whether the officers had reasonable suspicion for their initial detention, and the court will adopt the R&R's finding that probable cause justified searching the vehicle after Officer Palmer smelled and observed marijuana during the investigative stop. (*See* R&R at 20–21.) In addition, the government does not object to, and the court will adopt, the magistrate judge's recommendation that Perez's statements while being handcuffed should be suppressed under *Miranda v. Arizona*, 384 U.S. 436 (1966). (*See* R&R at 21–26.)

5

(1991)). The record in this case is clear that a seizure occurred when Perez kneeled on the ground in accordance with Officer Palmer's instructions (Def. Ex. 144 at 2:25:14–16), and that Officer Palmer smelled the marijuana only after Perez had submitted to Officer Palmer's show of authority by kneeling and then re-entering the vehicle as instructed.[4] (*Id.* at 2:25:23; Doc. 81 at 29:25–30:11.) The smell of marijuana, therefore, cannot be considered in assessing whether reasonable suspicion existed for Defendants' initial seizure.

Defendants' second argument, that the R&R improperly concluded in its assessment of whether reasonable suspicion existed that Perez attempted to flee the scene, is less persuasive. It is well-established that a defendant's nervous or evasive actions can weigh toward a finding of reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 119 (2000); *United States v. Valentine*, 232 F.3d 350, 357 (3d Cir. 2000) (finding that walking away from the police or "slouching, crouching, or any other arguably evasive movement, when combined with other factors particular to the defendant or his vehicle, can add up to reasonable suspicion") (internal citation omitted). As with all factors relevant to determining reasonable suspicion, attempted flight must be evaluated from the perspective of a reasonable officer. *See* R&R at

---

[4] Notably, the government does not argue that the smell of marijuana supported reasonable suspicion for the detention, but rather that it supported the stop's duration. (Doc. 81 at 65:25–67:16.)

13–14 citing *United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005) (stating that reasonable suspicion requires the "officer [to have] a particularized and objective basis for suspecting legal wrongdoing" given the totality of the circumstances) (internal citation omitted). Officers must regularly apply their common sense and experience to draw inferences and decide whether the conduct they observe is suspicious, and those inferences are entitled to deference. *United States v. Foster*, 891 F.3d 93, 104 (3d Cir. 2018).[5]

At the suppression hearing, Officer Palmer credibly testified that he believed Perez was preparing to flee given his abrupt exit from the vehicle, and Officer Palmer's version of the events is bolstered by his contemporaneous statement to the same effect. (R&R at 16; Doc. 81 at 36:1–2, 41:18–23; Def. Ex. 144 at 2:30:00–30.) Officer Palmer also testified that he knew the neighborhood was a high-crime area because he was personally involved in foot pursuits relating to drug activity nearby. (Doc. 81 at 11:3–10.) As the R&R aptly explains, Perez's actual motive for exiting the vehicle is not particularly relevant to the officers' formation of reasonable suspicion. (R&R at 17–18.) Nor is it significant whether Perez recognized the

---

[5] Jocktane argues that the court should give limited deference to the officers because of their limited law enforcement experience. (Doc. 133 at 3.) However, of the two authorities he cites for this proposition, one is a nonbinding district court decision, and the other is a Third Circuit case that does not apply the principle or even state it unambiguously. *See United States v. McCray*, 148 F. Supp. 2d 379, 390 (D. Del. 2001); *United States v. Brown*, 159 F.3d 147, 149 (3d Cir. 1998). Besides *McCray*, no other case citing this portion of *Brown* varies the degree of deference afforded to officers based on their particular years of experience. Accordingly, the court will not discount its deference to the officers here.

individuals with flashlights as police. *See United States v. Brown*, 159 F.3d 147, 150 (3d Cir. 1998) (stating that "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea") (internal citation omitted); *Hargraves v. D.C.*, 134 F. Supp. 3d 68, 81–82 (D.D.C. 2015) (explaining that "the salient fact in *Wardlow* was that the defendant 'looked in the direction of the officers,' not that the defendant recognized and was in fact looking at police officers").

As a practical matter, law enforcement officers cannot be required to rule out every imaginable innocent explanation for a person's suspicious behavior before acting to detain them. "[W]hen the police learn of potentially suspicious conduct, officers can stop and question the suspects to resolve ambiguity about the suspects' conduct." *Valentine*, 232 F.3d at 356; *Wardlow*, 528 U.S. at 125–26 (noting that even in *Terry* the defendants' conduct—pacing in front of a store, conferring with one another, and peering in windows—which was itself lawful and "susceptible of an innocent explanation" nevertheless raised reasonable suspicion to justify the stop). The standard for an investigative detention is reasonable suspicion, which deals in probabilities. *United States v. Cortez*, 449 U.S. 411, 418 (1981) (describing reasonable suspicion as "common sense conclusions about human behaviors . . . as understood by those versed in the field of law enforcement"). Viewing the totality of the circumstances, it was objectively reasonable for Officer Palmer to infer that

Perez was fleeing given his hasty exit from a reportedly suspicious vehicle upon the approach of police officers in the middle of the night in a high crime area. (*See* R&R at 16–17 citing *United States v. Navedo*, 694 F.3d 463, 472 (3d Cir. 2012) ("[F]light must . . . be assessed in context with *all* of the circumstances surrounding it."). Because Perez's movements were reasonably interpreted as evasive, they properly weigh toward a finding of reasonable suspicion.

In light of these circumstances, the court finds that the officers had reasonable suspicion for the stop. The factors supporting reasonable suspicion include: (1) a 911 call reported a suspicious vehicle whose presence made the caller uncomfortable; (2) a vehicle substantially matching the caller's description was located at the reported address; (3) the vehicle was occupied at approximately 2:30 a.m. in a residential neighborhood known for high crime; and (5) Perez abruptly exited the vehicle when officers on foot shone flashlights on it.

Contrary to Defendants' arguments, the facts in this case are more similar to those in *United States v. Valentine*, 232 F.3d 350 (3d Cir. 2000) than in *United States v. Lowe*, 791 F.3d 424 (3d Cir. 2015). In *Valentine*, the Third Circuit found that officers had reasonable suspicion to stop and frisk the defendant "after they received the face-to-face tip, were in a high-crime area at 1:00 a.m., and saw [the defendant] and his two companions walk away as soon as they noticed the police car." *Valentine*, 232 F.3d at 357. In contrast, the court in *Lowe* determined that officers

9

did not have reasonable suspicion to stop and frisk the defendant where they received an anonymous tip that a man matching the defendant's description had a gun in his waistband; it was late at night in a high crime neighborhood and a shooting had occurred nearby 90 minutes earlier; and the defendant stepped backwards and failed to promptly comply with officers' instructions. *Lowe*, 791 F.3d at 434.

Here, the named 911 caller's report of the suspicious vehicle nearby her residence is more akin to the in-person tip in *Valentine* than the anonymous tip in *Lowe* in that officers could easily follow up with the caller if it was a false report. *See Valentine*, 232 F.3d at 355. Additionally, Perez's swift exit of the vehicle when police approached is more similar in evasiveness to the *Valentine* defendant walking away from officers than the *Lowe* defendant's startled, seemingly involuntary steps backward. *See Lowe*, 791 F.3d at 434–35. Perez's deliberate movements, purportedly to confront "junkies," cannot be described as a knee-jerk reaction, and as in *Valentine*, these factors combined with the late hour and high crime location created a totality of circumstances supporting reasonable suspicion.

Defendants' arguments against reasonable suspicion are unavailing. They argue that the officers had no knowledge of illegal activity when they approached the vehicle because no crimes were reported around the same time and place and since the caller stated she did not see a gun. But reasonable suspicion does not require the officers to know that a crime has been committed. *See, e.g.*, *Terry*, 392

U.S. at 22–23 (not a crime to peek in store windows); *Valentine*, 232 F.3d at 356 (not necessarily a crime to carry a gun in public). And while Defendants contend that because the address contained multiple apartment units, an unknown vehicle parked in a rear grassy driveway is not suspicious, public safety is advanced by community members reporting behavior that is suspicious—even if not necessarily criminal—to facilitate police investigation and crime prevention. *See Valentine*, 232 F.3d at 356. Defendants are correct that the 911 call alone is not sufficient to support reasonable suspicion, but it can properly be factored into such a finding.

Weighing the totality of the circumstances, the court finds that the officers had reasonable suspicion that criminal activity was afoot at the moment of seizure and based on articulable and particularized facts. Therefore, the stop did not violate the Fourth Amendment's guarantee against unreasonable search and seizure.

## IV. CONCLUSION

For the reasons explained above, the court will adopt the R&R's recommendation by denying Jocktane's motion to suppress and granting Perez's motion to suppress only as to his statements while being handcuffed. An appropriate order shall follow.

*s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: January 19, 2022